Submitted on remand from the Oregon Supreme Court December 22, 2004, reversed and remanded March 16, 2005

## David H. SEARS
## and Marie E. Sears,
### *Respondents,*

*v.*

## David M. SEARS,
### *Respondent below,*

### *and*

## Linda Marie Sunshine BOSWELL,
### *Appellant.*

## 01-2933; A117631

108 P3d 639

Brandon B. Mayfield for appellant.

Alan H. Biedermann for respondents.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

**LINDER, J.**

This case is before us on remand from the Oregon Supreme Court, *Sears v. Sears*, 337 Or 555, 101 P3d 809 (2004), with instructions to reconsider it in light of the court's decision in *O'Donnell-Lamont and Lamont*, 337 Or 86, 91 P3d 721 (2004). We previously determined that paternal grandparents had not rebutted the statutory presumption under ORS 109.119[1] that mother had acted in the best interests of her child (AM). We therefore reversed the trial court's award of custody of AM to grandparents. *Sears v. Sears*, 190 Or App 483, 79 P3d 359 (2003). We now reexamine the record in light of the guidance provided by the Supreme Court regarding the requirements of ORS 109.119.[2] On remand, we again reverse.

In *O'Donnell-Lamont*, the Supreme Court extensively examined the requirements of ORS 109.119 for nonparents who have established a parent-child relationship with a child and who seek to obtain legal custody of that child. The court first reviewed the terms of ORS 109.119 to determine how demanding the burden is on the nonparent to rebut the statutory presumption that the parent acts in his or her child's best interests. In that regard, the court observed that the legislature expressly specified proof by a preponderance of the evidence, rather than clear and convincing evidence. *O'Donnell-Lamont*, 337 Or at 107.[3]

---

[1] In our original opinion, we applied the 2001 version of ORS 109.119. The legislature amended the statute in 2003 in ways that do not affect our analysis. *See* Or Laws 2003, ch 143, §§ 1, 2; Or Laws 2003, ch 231, §§ 4, 5; Or Laws 2003, ch 576, §§ 138, 139. For that reason, we cite the 2003 version of the statute.

[2] The Oregon Supreme Court remanded this case to us on October 26, 2004; the case was submitted on remand on December 22, 2004. Since the remand, neither party has filed or sought to file any further briefing or other submission. We therefore reconsider our prior decision on the basis of the record and the parties' previous briefing and memoranda.

[3] We note that, on appeal, mother asserts that ORS 109.119 is facially unconstitutional because it does not require clear and convincing evidence. We concluded in our first decision, however, that her challenge in that regard is not preserved. *Sears*, 190 Or App at 494. In *O'Donnell-Lamont*, no issue of the statute's constitutionality was presented, and the court, therefore, did not consider whether proof by preponderant evidence meets constitutional requirements. 337 Or at 104 n 8.

The court next considered the kind of evidence that a nonparent seeking custody must present to rebut the parental presumption. *Id.* at 108. In particular, the court examined the five rebuttal factors specified in the statute to determine whether "evidence that supports less than all those factors— or other evidence not encompassed within the enumerated factors—is sufficient to rebut the statutory presumption." *Id.* The court observed that, "ordinarily, a nonparent seeking to overcome the parental presumption will do so by proving that the parent is unable or unwilling to provide adequate care or that the parent is likely to cause harm to the child." *Id.* at 109. But the failure to produce such proof is not necessarily fatal. *Id.* Rather, "the focus of [ORS 109.119] is not on whether one or more of the statutory factors are present, but on whether the evidence as a whole is sufficient to overcome the presumption that the parent acts in the best interest of the child." *Id.* As the court described,

> "[t]here may be cases in which the parent is so obviously unwilling or unable to care adequately for the child that a court could conclude that the parental presumption was rebutted, despite the absence of evidence of any of the other four factors. Conversely, a nonparent may be able to present some evidence of each of the five enumerated factors and yet be unable to prove, by a preponderance of the evidence, that the legal parent fails to act in the best interest of the child. In specific cases, the weight to be given to each of the five statutory factors, to the evidence supporting those factors, and to other relevant evidence, will vary. The statutory touchstone is whether the evidence at trial overcomes the presumption that a legal parent acts in the best interest of the child, not whether the evidence supports one, two, or all five of the nonexclusive factors identified in ORS 109.119(4)(b)."

*Id.* at 108.

When we first decided this case, we did not have the benefit of the Supreme Court's opinion in *O'Donnell-Lamont.* Our analysis, nevertheless, was substantially consistent with the approach that the Supreme Court has now outlined. Even so, on remand, we have reexamined *de novo* the evidence as a whole, which we described at length in our first decision. *Sears,* 190 Or App at 485-94. We do not repeat that

factual description here. But for the reasons outlined below, we adhere to our conclusion that grandparents in this case have not overcome the statutory presumption in favor of parents by a preponderance of the evidence.

First and foremost, we remain satisfied that grandparents have not shown, by a preponderance of the evidence, that mother is unable or unwilling to provide adequate care for AM. *See* ORS 109.119(4)(b)(A). Mother was 17 years old when AM was born. Soon after AM's birth, paternal grandparents began assisting with AM's care. By the time AM was eight months old, grandparents had become AM's primary caretakers. Throughout that time, mother was only a teenager herself. Equally or more significantly, she was financially and emotionally supporting father (grandparents' son), who was only 15 years old when AM was born and who had significant anger management and drug abuse problems throughout the time that mother lived with him. Once mother broke off her relationship with father, she stabilized her employment and living situation and began to have increasingly regular contacts with AM. Grandparents encouraged that contact, which reflects their own apparent belief that a relationship between AM and mother was beneficial, or at least not detrimental, to AM. *See O'Donnell-Lamont*, 337 Or at 115 (observing that, when a parent encourages contact or informal custody with a nonparent, such conduct reveals that the parent, at least at that point, apparently believed that a relationship between the nonparent and child was beneficial, or at least not detrimental, to the child). The relationship that has developed between mother and AM as a result of those increasingly regular contacts has been positive and loving, and mother has been an attentive and responsible parental figure since that time. *Sears*, 190 Or App at 488-89.

We also remain satisfied that grandparents have not persuasively demonstrated that circumstances detrimental to AM exist if they are denied custody. *See* ORS 109.119(4)(b)(C). In that regard, grandparents raised concerns that mother had used alcohol and marijuana, had lived in unsanitary conditions, did not attend to AM in the past when he had a rash, and in other nonspecific ways did not protect AM's safety in the past. We described the evidence

relevant to those concerns at length in our first opinion. *Sears*, 190 Or App at 489-94. Based on our *de novo* review of the record, we concluded that evidence related only to "past and generally isolated circumstances" and did not establish that any detrimental or harmful circumstances existed at the time of the custody hearing in November 2001. *Id.* at 498. The Supreme Court emphasized in *O'Donnell-Lamont* that, under the statute, the nonparent must demonstrate that the circumstances of living with the legal parent pose a "serious *present* risk of psychological, emotional, or physical harm to the child." 337 Or at 113 (emphasis added). Here, grandparents' evidence did not establish such a present risk. Thus, grandparents have not overcome the presumption in favor of mother by the factors that ordinarily will do so—namely, by showing that mother is unable or unwilling to adequately care for AM or that circumstances detrimental to AM exist if grandparents are denied custody.

Although grandparents' inability to make such a showing is not fatal, as a matter of law, to their burden of proof, the record in this case does not otherwise satisfy that burden. The record establishes that grandparents, as of the time of the custody hearing, had been AM's primary caretakers and had a close, loving, and positive relationship with AM. *See* ORS 109.119(4)(b)(B). That factor weighs in favor of rebutting the parental presumption because of the benefit of continuity of caregiving and the significance of the relationship between AM and grandparents. *O'Donnell-Lamont*, 337 Or at 111. Counterbalancing that consideration, however, is the fact that mother has not unreasonably denied or limited contact between AM and grandparents in the past, nor does the record suggests that she will do so in the future. *See* ORS 109.119(4)(b)(E). Thus, the relationship between AM and grandparents is likely to be preserved even if grandparents are not awarded custody. *See generally O'Donnell-Lamont*, 337 Or at 116 (parent's unreasonable denial of or limitation on nonparent's contact with child also focuses on the bond between the child and the nonparent and the potential harm to a child's interest when a parent terminates or limits such a relationship).

That leaves the fifth rebuttal factor—whether mother consented to and encouraged the relationship

between grandparents and AM. *See* ORS 109.119(4)(b)(D). Here, mother did so. On *de novo* review, however, we conclude that her doing so does not weigh against mother, just as the Supreme Court found that the same factor did not weigh against the father in *O'Donnell-Lamont*. 337 Or at 115-16. As we earlier noted, when AM was born, mother was a teenager who was financially and emotionally supporting grandparents' 15-year-old son (AM's father), who had significant anger management and drug abuse problems. A fair view of the circumstances at the time is that mother took on the role of primary caretaker for grandparents' son, while grandparents took on the role of primary caretaker for mother's child. By entrusting AM to grandparents' care, mother better ensured AM's well-being and insulated AM from father's violent outbursts and drug activities. On this record, mother acted in AM's best interests, not contrary to them, in encouraging and consenting to the relationship between grandparents and AM.

The question remains whether, under the "totality of the circumstances, grandparents have rebutted the presumption" that mother acts in the best interests of AM. *Id.* at 117. Although we are not limited to the statutory factors in making that assessment, we have focused on them because the parties do so. On balance, we find that the primary factor favoring grandparents in their burden to overcome the presumption is that they have a strong and loving relationship with AM after having been AM's primary caretakers for almost two years before the custody hearing. That factor is offset, however, by mother's ongoing willingness to give grandparents reasonable contact with AM. All other factors favor mother. Grandparents have not shown that mother is unable or unwilling to adequately care for AM. Nor have they shown that circumstances detrimental to AM presently exist if grandparents are denied custody. Finally, mother's conduct in encouraging and consenting to the relationship between grandparents and AM served AM's best interests.

In our first opinion, we concluded that, "based on the totality of the circumstances, we [were] not persuaded on our *de novo* review of the record that grandparents have rebutted, by a preponderance of the evidence, the statutory presumption that mother acts in the best interest of AM." *Sears,*

190 Or App at 498. On reconsideration and further review of the record in light of the guidance provided by *O'Donnell-Lamont*, that remains our view. We therefore adhere to our original disposition of the appeal. *Sears*, 190 Or App at 498-99.

Reversed and remanded.