Argued and submitted July 21, 2004, award of custody reversed and remanded;
otherwise affirmed April 13, 2005

In the Matter of the Marriage of

Richard John DENNIS,
*Appellant,*
*and*

Christina J. DENNIS,
*Respondent.*

Linda SANTINEAU,
*Respondent,*
*and*

Christina J. DENNIS,
*Respondent,*
*and*

Richard John DENNIS,
*Appellant.*

15-02-15554; A121938

110 P3d 607

George W. Kelly argued the cause and filed the brief for appellant.

George L. Derr argued the cause and filed the brief for respondent Linda Santineau.

No appearance for respondent Christina J. Dennis.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

WOLLHEIM, J.

## WOLLHEIM, J.

Father appeals from a judgment that awards custody of his two children to their maternal grandmother and grants him parenting time.[1] We review the facts *de novo*, ORS 19.415(3).[2] Because we conclude that grandmother did not rebut the statutory presumption that father acts in the best interests of his children, we reverse and remand.

Mother and father married in the late 1990s.[3] They have two children. C was born in 1997 and was approximately five and one-half years old at the time of the trial in March 2003. Because C has severe developmental delays in his auditory comprehension and expressive communication, he attends a special school that provides speech and other therapies. In most areas of development, C's abilities lag approximately two years behind those of his peers. H was born in 1999 and was approximately three and one-half years old at the time of trial. Unlike his brother, he does not have any developmental delays. We understand that, by early 2000, C and H were living with grandmother, who, thereafter, has been their primary caretaker.[4]

---

[1] Grandmother asserts that father stipulated to the trial court's custody determination and that, as a consequence, he cannot challenge that determination on appeal because he did not preserve his objections to it. We disagree with grandmother's characterization of the parties' stipulation. At trial, the parties offered no testimony. Instead, they stipulated that the trial court would determine custody based on the information in the custody evaluation and father's trial memorandum. Accordingly, the parties stipulated that the court could consider certain information in making its decision. They did not, as grandmother contends, stipulate to the trial court's ultimate decision concerning custody.

[2] We apply the current version of the statute in this case because the Supreme Court has implied that, in the context of a domestic relations case, the 2003 amendments to ORS 19.415(3), *see* Or Laws 2003, ch 576, §§ 88, 90a, did not affect the court's *de novo* standard of review. *See Kunze and Kunze*, 337 Or 122, 124, 92 P3d 100 (2004) (applying the 2003 amendments). Further, in light of the parties' stipulation, the facts that we find on *de novo* review are based on the statements made by Kathleen Meredith, the custody evaluator, in her written report. The quotations in the opinion concerning the facts of the case are taken from that report as well.

[3] The date of the parties' marriage is unclear from the record. Father indicates that he and mother married in 1997. The judgment states that as well. Father also contends that he and mother married when their younger child was four months old. However, the parties' younger child was not born until July 1999. Further, according to the custody evaluation, the marriage was "brief" and mother decided to end the marriage after six months.

[4] On most weekdays, mother lives with grandmother and the children. Although she began using crack cocaine approximately seven months before trial,

During their marriage, mother and father used illegal drugs and father used alcohol. Father was emotionally and physically abusive and demonstrated no desire to care for his children. Apparently, in late 1999, mother and father separated after father committed an act of domestic violence against mother. According to father, he was on "parole" at the time of that incident. As a result, his "parole" was revoked and he was incarcerated for approximately 18 months from December 1999 to June 2001.[5] Over grandmother's objections, the children visited him in prison a few times. Although an individual with "Prison Ministries" reported to the custody evaluator that " 'all [father] thought about when he was in prison was his boys,' " father had little contact with them. In March 2002, after his release, father had an additional "contact with police" when "he was convicted of Improper Use of 911. He was intoxicated at the time of this offense." Nonetheless, his parole expired in June 2002, and his probation expired in November 2002.

While he was in prison and after his release, father completed counseling and treatment programs concerning domestic violence, anger management, parenting, drug and alcohol abuse, and Bible studies. Father has his GED and has completed two terms at Lane Community College. Although he had a job soon after his release from prison, he had been laid off for most of the year before trial. Father completed comprehensive psychological testing at Job Corps that indicated that he has "Attention Deficit Hyperactive Disorder,

she began drug treatment and counseling in January 2003 and, according to the custody evaluator, mother's urinalyses "have been negative for cocaine." Additionally, the custody evaluator indicated that mother "is making good progress in counseling, but her coping skills are not good, and she has been under considerable stress due to this custody controversy and occasional conflicts with her mother."

Mother does not contribute money to the children's support, but she will occasionally buy something for them. Mother had been employed as a housekeeper in nursing homes until April 2002 when she spent several days in jail for violating her probation. The custody evaluator indicated that mother "had been found guilty of forgery and theft" in September 2000. Her probation was scheduled to end in September 2003 and her probation officer told the custody evaluator that mother was " 'marginally in compliance.' " At the time of trial, she was self-employed, was earning less than $400 each month doing laundry, and planned to obtain her GED.

[5] According to the custody evaluator, "[a]s an adult[, father] has been convicted of two felonies and three misdemeanors. He has been incarcerated on four occasions for terms ranging from 30 days in jail[ ] to 18 months in prison. These were all the result of violations of the terms of probation or parole."

with emphasis on hyperactive" and "[t]he clinical impression was 'possible alcohol dependency.' " Additionally, father's driving privileges were revoked several years before trial, but he can apparently regain them by paying approximately $800 in fines. Father's mother pays most of his state-ordered child support payments.

In early 2002, father met Esther Lawton. Shortly thereafter, father began living with her and her four children, who are between five and 13 years of age, in a house that Lawton is purchasing. Lawton's two younger sons have developmental disabilities similar to those of C, and they receive special schooling. Father cares for Lawton's children while Lawton works, and Lawton believes that father does a good job. Lawton's family lives in the area and is actively involved with her, her children, and father. Father and Lawton plan to marry.

Although father and grandmother "have a long history of a contentious relationship and inability to communicate," father visited the children several times after his release from prison in June 2001. In August 2002, father petitioned for dissolution of his marriage and for custody of his children. Thereafter, in October 2002, the trial court entered a stipulated parenting time order granting father supervised visitation. Grandmother supervised the visitation.

Then, in January 2003, father voluntarily began a drug treatment program to demonstrate that he was no longer using illegal drugs. His urinalyses have not revealed drug use, and his counselor has indicated that father is doing well. Further, Lawton does not tolerate illegal drug use; however, she and father routinely consume beer even though the particular treatment program in which father is participating requires abstinence from alcohol as well as drugs. Lawton sees no evidence that father abuses alcohol. Also, in January 2003, the location of father's visitation apparently changed to the home of his aunt. Finally, in February, grandmother, pursuant to ORS 109.119, intervened in the domestic relations action, seeking custody of the children.

In March 2003, the custody evaluator issued her report in which she stated that the children "interacted in a

natural, trusting manner with their respective families." Additionally, the evaluator reported that, "[a]ccording to all sources for each family, the boys are demonstrative and affectionate with" grandmother, mother, father, and Lawton. The evaluator concluded:

> "All of the information I gathered and my own observations lead me to conclude that the boys should remain with their grandmother. At the same time, they need more contact with their father.
>
> "[Father] has made a very strong effort to prepare himself to be a good father. He is living in a stable relationship with [Lawton], who struck me as being a sensible person and a good mother.
>
> "I recommend the following visiting arrangements:
>
> "[Father] should immediately be given access to [C's] caseworker and school. [H]e needs to learn how to help [C] developmentally and educationally. He will need to purchase some educational materials that [C's developmental specialist] can recommend.
>
> "The boys should spend every other weekend from Saturday morning until Sunday evening with [father] and [Lawton] in their home.
>
> "[Father] must abstain from alcohol and other intoxicants during these visits.
>
> "There should always be another adult present for the visits. [C] and [H] are really both only 3 1/2 years old developmentally. They need to be closely supervised, and one person in a large household can't concentrate only on them.
>
> "I suggest that [father] and [Lawton] invite [mother] to visit on at least one occasion (preferably during the second visit) when the boys are with them. When [mother] sees the boys happy and well cared for in [father's] home, both she and [grandmother] will be reassured, and the tension between the two homes will lessen. Also, [mother] is experienced in using the educational materials with [C] and can show [father] and [Lawton] her techniques, which [I] observed to be very good.
>
> "* * * * *

"Since [father] and [grandmother] have such difficulty communicating, I suggest [Lawton] and [grandmother] develop a dialogue.

"Assuming that all goes well from now until June, I recommend the boys spend one week in July and one week in August with their father. Also, ½ the school Christmas vacation and some time at Thanksgiving and spring vacation.

"If by summer of 2004 visitation has progressed relatively smoothly, the boys should spend two weeks in each of July and August with their father.

"It is critical that [father] and [Lawton] work with [C] as recommended by his caseworker. He must not be permitted to lose ground, especially this summer when he is preparing for kindergarten."

Also in March, the trial court awarded custody to grandmother pursuant to ORS 109.119. At trial, the court stated that it found

"that the presumption that one of the birth parents should be the custodial parent has been rebutted. And I find that under ORS 109.119(2) that rebuttal has been proven by parts A, capital B, C and D. Therefore, I declare the custodial person to be [grandmother]."

Additionally, in its judgment, the court stated that it found "that the findings, opinions and evaluations of the Custody Evaluator are reasonable and appropriate" and that it would be in the children's best interests to remain in grandmother's custody.[6] Mother and father were granted parenting time.

---

[6] ORS 109.119(2)(b) provides that, "[i]n an order granting relief under this section, the court shall include findings of fact supporting the rebuttal of the presumption described in paragraph (a) of this subsection." That presumption is "that the legal parent acts in the best interest of the child." ORS 109.119(2)(a). To determine whether the presumption has been rebutted, the statute provides a list of nonexclusive factors that the trial court may consider. *See* ORS 109.119(4)(b)(A) - (E). We understand the trial court's references to "parts A, capital B, C and D" to be references to the subparagraphs of ORS 109.119(4)(b).

The trial court's mere recitation of the statutory factors, however, without any explanation of the way in which those factors, and the underlying facts, support its ultimate determination that grandmother rebutted the statutory presumption does not satisfy the standard in ORS 109.119(2)(b) to "include findings of fact supporting the rebuttal of the presumption." As we noted in *Van Driesche and Van Driesche*, 194 Or App 475, 482 n 2, 95 P3d 262 (2004), "[t]rial courts should provide

In father's first assignment of error on appeal, he asserts that the trial court erred in granting grandmother custody of the children. Because it is dispositive, we address only father's argument that the trial court incorrectly determined that grandmother rebutted the statutory presumption in favor of the legal parent in ORS 109.119. Specifically, father contends that grandmother did not demonstrate that he was unwilling or unable to care for the children and that circumstances detrimental to the children would exist if she were denied custody. Father requests that we remand this case to the trial court so that it may (1) "formulate a plan for transitioning the children from living primarily with grandmother to living primarily with father" and (2) determine appropriate "parenting time" for mother and grandmother.

Grandmother responds that she rebutted the statutory presumption in favor of father. She asserts that "[t]he court specifically made the finding that the presumption had been rebutted under sections (A), (B), (C) and (D)" and that "[t]here was more than sufficient evidence in the record to support the findings made by the trial court." In support of her argument, grandmother asserts that the children have been in her care

"for almost their entire lives, with the actual and effective consent of the parents. The older child, [C] is developmentally delayed. * * * The record reveals that [father] has a

such explanation in order to facilitate appellate review." Those findings may provide guidance to later courts in determining whether to modify an order under ORS 109.119 and are important to an appellate court to the extent that they reflect credibility determinations. *See In re Schenck*, 318 Or 402, 420, 870 P2d 185, *cert den*, 513 US 871 (1994) (reasoning that, "on *de novo* review, determinations of credibility are given significant weight when based on the factfinder's perception of a witness's demeanor"). Merely referring to the statutory factors set out in ORS 109.119(4) does not further the purposes underlying the statutory requirement for findings.

Nevertheless, we need not remand this case to the trial court to make the necessary factual findings because, in this case, the court's findings would not affect our review for two interrelated reasons. First, the parties stipulated that the court could consider only the custody evaluator's written report and father's trial memorandum in making its decision concerning custody; thus, the parties have agreed on the scope of the record before the court. Second, because the parties have agreed to that *written* record, the trial court's findings of fact will not reflect any credibility determinations that would affect our *de novo* review of that record on appeal. For those reasons, a remand to the trial court would not affect our review and would result in unnecessary delay.

history of violent criminal behavior and has been incarcerated for a substantial part of his children's lives. He has been diagnosed with Attention Deficit - Hyper Active Disorder with 'possible alcohol dependency.'

"Until this case was pending, he had no significant contact with the children, and even then it was supervised by [g]randmother. While he was in prison he made little or no effort to contact the children. Although the record shows [father] may have attempted to make some improvements in his life, the attempts are relatively inconsequential. There was also information in the record to show that [f]ather was continuing to use alcohol."

In sum, grandmother asserts that father

"effectively waived [his parental] rights through his criminal misconduct, drug and alcohol abuse, lack of contact with and his neglect of the children, his tacitly agreeing (if not his actual agreement) to leave the children in the custody of [g]randmother while in prison and on parole and probation; and as a result of his stipulation to resolve the case on the basis of the custody evaluator's report."

ORS 109.119 governs this custody dispute between father—that is, the legal parent—and grandmother—that is, the nonparent who has established a child-parent relationship with the C and H.[7] In such a proceeding, "there is a presumption that the legal parent acts in the best interest of the child." ORS 109.119(2)(a).

---

[7] A "legal parent" is "a parent as defined in ORS 419A.004 whose rights have not been terminated under ORS 419B.500 to 419B.524." ORS 109.119(10)(d). The parties do not dispute that father satisfies the definition of "parent" in ORS 419A.004(16). A "grandparent" is "the legal parent of the child's legal parent." ORS 109.119(10)(c). Additionally, a "child-parent relationship" is

"a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs."

ORS 109.119(10)(a). There is no dispute that grandmother satisfies the definition of a "grandparent" and that she has established a child-parent relationship with C and H.

"If the court determines that a child-parent relationship exists and if the court determines that the presumption described in subsection (2)(a) of this section has been rebutted by a preponderance of the evidence, the court shall grant custody * * * to the person having the child-parent relationship, if to do so is in the best interest of the child."

ORS 109.119(3)(a). As we have already indicated, in this case, the disputed issue is whether grandmother has rebutted the statutory presumption in favor of father by a preponderance of the evidence, and, if she has, whether awarding her custody is in the children's best interests.

■  To determine whether grandmother has rebutted the statutory presumption, we turn to ORS 109.119(4)(b), which provides:

"In deciding whether the presumption described in subsection (2)(a) of this section has been rebutted and whether to award custody, guardianship or other rights over the objection of the legal parent, the court may consider factors including, but not limited to, the following, which may be shown by the evidence:

"(A)  The legal parent is unwilling or unable to care adequately for the child;

"(B)  The petitioner or intervenor is or recently has been the child's primary caretaker;

"(C)  Circumstances detrimental to the child exist if relief is denied;[8]

"(D)  The legal parent has fostered, encouraged or consented to the relationship between the child and the petitioner or intervenor; or

"(E)  The legal parent has unreasonably denied or limited contact between the child and the petitioner or intervenor."

The Supreme Court discussed those factors in *O'Donnell-Lamont and Lamont*, 337 Or 86, 91 P3d 721 (2004), *cert den*, ___ US ___ , 125 S Ct 867 (2005), and discussed the type of

---

[8] " 'Circumstances detrimental to the child' includes but is not limited to circumstances that may cause psychological, emotional or physical harm to a child." ORS 109.119(10)(b).

evidence that a nonparent must establish to rebut the parental presumption, *id.* at 108. In *Sears v. Sears*, 198 Or App 377, 380, 108 P3d 639 (2005), we summarized the Supreme Court's analysis as follows:

> "[T]he court examined the five rebuttal factors specified in the statute to determine whether 'evidence that supports less than all those factors—or other evidence not encompassed within the enumerated factors—is sufficient to rebut the statutory presumption.' [*O'Donnell-Lamont*, 337 Or at 108]. The court observed that, 'ordinarily, a nonparent seeking to overcome the parental presumption will do so by proving that the parent is unable or unwilling to provide adequate care or that the parent is likely to cause harm to the child.' *Id.* at 109. But the failure to produce such proof is not necessarily fatal. *Id.* Rather, 'the focus of [ORS 109.119] is not on whether one or more of the statutory factors are present, but on whether the evidence as a whole is sufficient to overcome the presumption that the parent acts in the best interest of the child.' *Id.* As the court described,
>
>> " '[t]here may be cases in which the parent is so obviously unwilling or unable to care adequately for the child that a court could conclude that the parental presumption was rebutted, despite the absence of evidence of any of the other four factors. Conversely, a nonparent may be able to present some evidence of each of the five enumerated factors and yet be unable to prove, by a preponderance of the evidence, that the legal parent fails to act in the best interest of the child. In specific cases, the weight to be given to each of the five statutory factors, to the evidence supporting those factors, and to other relevant evidence, will vary. * * *'
>
> "*Id.* at 108."

(Third and fourth brackets in original.) With those principles in mind, we turn to our analysis of the statutory factors.

Grandmother has not demonstrated, by a preponderance of the evidence, that father is unable or unwilling to provide adequate care for the children. *See* ORS 109.119(4)(b)(A). Father acknowledges that he is a felon who has spent time in prison and that, in the past, he committed domestic violence toward mother and used illegal drugs. However, although that history is a serious concern, father

has made a great effort to change his past behaviors. For example, while in prison and after his release, he completed numerous treatment programs in an apparent effort to improve his behaviors. After his release, his contact with the children increased. Additionally, he voluntarily began drug treatment to demonstrate that he no longer uses illegal drugs, and his urinalyses indicate that he is not using illegal drugs. He is in a stable relationship with Lawton and contributes to their family by caring for her children, two of whom have developmental delays similar to C's. There is no indication in the record that his care of Lawton's children is deficient or inadequate. Moreover, the children have developed a trusting and affectionate relationship with him and Lawton.

We share the custody evaluator's concern that father may be unable to closely supervise C and H as well as Lawton's children by himself, particularly in light of his "Attention Deficit Hyperactive Disorder," and we agree with the evaluator that the presence of another adult would be helpful. That concern, however, is insufficient to demonstrate that father is unable to care adequately for the children. Many parents with multiple children who are close in age may face issues similar to those facing father. However, parents in those circumstances may seek additional assistance from family or friends to help them provide for their children. Here, Lawton's family lives in the area, and they are actively involved in her and father's lives and, according to the custody evaluator, would "provide [C] and [H] with a large extended family." Further, by concluding that the children needed more contact with their father, suggesting that father's parenting time increase over time, and suggesting that mother visit father and Lawton's home so that she can "see[ ] the boys happy and well cared for," we do not understand the evaluator's suggestion that another adult be present during father's visitation to mean that father is incapable of adequately caring for his sons.

Grandmother has also not persuasively demonstrated that circumstances detrimental to the children exist if she is denied custody. *See* ORS 109.119(4)(b)(C). Although we understand that grandmother has concerns about the children's well-being when they are in father's care, her concerns generally are based on father's past behaviors. *See*

*O'Donnell-Lamont*, 337 Or at 113 (reasoning that the statute requires that the nonparent "demonstrate that the circumstances of living with the legal parent pose a serious *present* risk of psychological, emotional, or physical harm to the child" (emphasis added)). Grandmother informed the custody evaluator that she was concerned that father had not been as "watchful" as he should have been during recent visits in her home and that, during several visits with father at his aunt's house, the children played outside even though she had asked that they be kept inside due to H's chronic cough and the children's tendencies for head colds. There is no indication in the record, however, that the children faced any adverse consequences because they played outside on those occasions. Finally, a clinical impression of the Job Corps psychological examination was " 'possible alcohol dependency.' " Although the record indicates that father regularly drinks and had a contact with police in March 2002 when he was intoxicated, there is no evidence that he drinks when the children are in his care. In sum, grandmother has not established that father is unwilling or unable to adequately care for the children or that any serious present risk to the children exists if she is denied custody.

Nonetheless, as we explained in *Sears*, the "inability to make such a showing is not fatal, as a matter of law, to [the nonparent's] burden of proof[.]" 198 Or App at 382. Significantly, grandmother has demonstrated that two of the statutory factors support the rebuttal of the parental presumption. First, grandmother demonstrated that father "fostered, encouraged or consented" to the children's relationship with her. *See* ORS 109.119(4)(b)(D). Here, grandmother had to care for the children, in part, because father chose to engage in behavior that caused the revocation of his "parole" and his incarceration for approximately 18 months. Unlike *O'Donnell-Lamont* and *Sears*, that factor weighs in favor of rebutting the parental presumption. In *O'Donnell-Lamont*, the Supreme Court refused to give weight to that factor because the father consented to the relationship when he was unable to take custody of the children after their mother's death and because the father's decision to allow the grandparents to care for the children did "not indicate in any way

that he does not act in the best interests of the children." 337 Or at 116. Similarly, in *Sears*, we refused to give weight to that factor because the mother's decision to entrust her son to his grandparents "better ensured [his] well-being and insulated [him] from [the] father's violent outbursts and drug activities"; thus, the mother's decision was in her son's best interests. 198 Or App at 383. By contrast, in this case, father made a decision to engage in behavior that resulted in his incarceration so that he was unavailable to care for the children. Because father's decision was not made in the children's best interests, his fostering, encouraging, or consenting to the children's relationship with grandmother weighs in favor of rebutting the parental presumption.

Second, father concedes that grandmother demonstrated that she has been the children's primary caretaker for most of their lives. *See* ORS 109.119(4)(b)(B). Grandmother has been providing care that meets the children's needs. In particular, the record indicates that she has worked closely with C's developmental specialist in order to help improve his skills and abilities. Moreover, the children have established a "trusting" and "affectionate" relationship with her. Our consideration of grandmother's primary caretaker relationship "focuses on the interest in continuity of caregiving and the relationship between the child and the nonparent seeking custody." *O'Donnell-Lamont*, 337 Or at 111. Certainly, the significance of the relationship between the children and grandmother is a factor that weighs in favor of rebutting the parental presumption.

Two other interrelated considerations, however, counterbalance that factor. First, even though father and grandmother have difficulty communicating, the record does not indicate that father has unreasonably denied or limited contact between the children and grandmother. *See* ORS 109.119(4)(b)(E). Second, on appeal, father does not request that the children immediately come to live with him. Instead, father requests that we remand this case to the trial court so that it may "formulate a plan for transitioning the children from living primarily with grandmother to living primarily with father" and determine appropriate "parenting time" for

grandmother. That request demonstrates that father understands the significance of the relationship between grandmother and the children. It also demonstrates that he understands that it is in the best interests of the children for the transition to occur so as to minimize the disruption and uncertainty that they will likely experience.

In sum, as the Supreme Court reasoned in *O'Donnell-Lamont*, "[t]he statutory touchstone is whether the evidence at trial overcomes the presumption that a legal parent acts in the best interest of the child, not whether the evidence supports one, two, or all five of the nonexclusive factors identified in ORS 109.119(4)(b)." 337 Or at 108. In this case, we conclude that, based on the totality of the circumstances, grandmother has not rebutted the statutory presumption by a preponderance of the evidence. Although father consented to the relationship between the children and grandmother and that strong and loving relationship has existed for many years, father has made substantial and apparently successful efforts to change his past behaviors so that he can fulfill his parental role. Grandmother did not demonstrate that father is unable to care adequately for the children or that circumstances detrimental to the children exist if relief is denied. Significantly, father recognizes the importance of the children's relationship with grandmother and the need for a transition period. Based on the totality of the circumstances, we conclude that father is entitled to custody of his children after a period of transition that is designed to ensure that the children's needs are best met. *See State v. Wooden*, 184 Or App 537, 554, 57 P3d 583 (2002) ("Father is entitled to custody of child, following a six-month transition period during which the visitation schedule ordered by the trial court will remain in effect."); *see also Wurtele v. Blevins*, 192 Or App 131, 150, 84 P3d 225, *rev den*, 337 Or 555 (2004) (noting that, "where appropriate, the court may mitigate the trauma from an abrupt change of custody by ordering a transitional period, temporarily deferring placement with the legal parent" but determining that a transitional period was inappropriate in that case). Thus, we remand this case to the trial court to establish an appropriate plan to transition the children to father's custody.

In light of our disposition, there is no need to discuss any of father's additional arguments concerning his first assignment of error. Additionally, there is no need for us to address father's second assignment of error concerning the trial court's award of parenting time to him.

Award of custody reversed and remanded; otherwise affirmed.